UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JAMIL FIELDS,

               Petitioner,                             ORDER

        -against-                            No. 23-CV-5428 (CS)

MARK MILLER,

               Respondent.
------------------------------------------------------x

Seibel, J.

      By Order dated August 23, 2023, (ECF No. 5), Chief Judge Laura Taylor Swain indicated that it appeared that Petitioner had not exhausted his state remedies as required, and gave him sixty days to file an amended petition "in which he alleges facts showing that he has exhausted the available state court remedies as to his grounds for *habeas corpus* relief." She also explained that the amended petition had to "state his grounds for *habeas corpus* relief, the facts that support those grounds, and detail the steps that he has taken to exhaust the available state court remedies as to those grounds." Petitioner did not do so in the time allotted. But by letter dated September 12, 2023, (ECF No. 6), he requested that the Court hold his petition in abeyance pending exhaustion of state court remedies.

      Whether the Court should grant Petitioner's request may turn on whether he can show "good cause for failure to exhaust, potential merit, and a lack of intentionally dilatory tactics." *Rodriguez v. Uhler*, No. 15-CV-9297, 2017 WL 9807068, at *9 (S.D.N.Y. Oct. 23, 2017), *report and recommendation adopted*, 2018 WL 1633568 (S.D.N.Y. Apr. 3, 2018)[1]; *see generally Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). Accordingly, no later than December 20,

---

[1] A copy of this case is attached to this Order.

2023, Petitioner shall file an amended petition that: 1) states his grounds for *habeas corpus* relief and the facts that support those grounds; 2) details the steps, if any, he has taken to exhaust state remedies as to those grounds; and 3) explains why he has not yet exhausted and why he has not engaged in dilatory tactics.  If his submission that does not fulfill all three of these requirements the petition will be dismissed without prejudice.

    Because Petitioner has not at this time made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

    The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: November 6, 2023
       White Plains, New York

                                                                    _____
                                                                       CATHY SEIBEL, U.S.D.J.

Case 7:23-cv-05428-CS   Document 8   Filed 11/06/23   Page 3 of 12

Rodriguez v. Uhler, Not Reported in Fed. Supp. (2017)
2017 WL 9807068

2017 WL 9807068
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jose RODRIGUEZ, Petitioner,
v.
Donald UHLER, Respondent.

15cv09297 (GBD) (DF)
|
Signed 10/23/2017

**Attorneys and Law Firms**

Jose Rodriguez, Malone, NY, pro se.

Alyson Joy Gill, New York State Attorney General, Brooklyn, NY, Lisa E. Fleischmann, New York State Office of the Attorney General, New York, NY, for Respondent.

### REPORT AND RECOMMENDATION

DEBRA FREEMAN, United States Magistrate Judge

*1 **TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

This habeas proceeding, commenced by *pro se* petitioner Jose Rodriguez ("Petitioner") pursuant to 28 U.S.C. § 2254 and referred to this Court for a report and recommendation, is in a highly unusual procedural posture. As set out in greater detail below, one of Petitioner's habeas claims—a claim that his state appellate counsel rendered constitutionally ineffective assistance by failing to perfect Petitioner's direct appeal more than 30 years ago—was fully exhausted at the time Petitioner filed his habeas petition in this Court. As of that time, the record showed (1) that Petitioner had raised the claim before the New York Appellate Division through a 2014 motion for a writ of error *coram nobis*, (2) that his *coram nobis* motion had been denied by the Appellate Division on November 13, 2014, on the basis of a Record seemingly showing that his direct appeal *had* been perfected and his conviction affirmed back in 1983, and (3) that, in 2015, the New York Court of Appeals had denied leave to appeal from the denial of *coram nobis* relief.

When, however, Respondent sought to assemble the state-court record for purposes of responding to Petitioner's habeas petition, Respondent reportedly discovered that the 1983 affirmance, upon which the Appellate Division had apparently relied in determining that Petitioner's appeal had been perfected, was that of another criminal defendant with the same name as Petitioner, and that, in fact, Petitioner's direct appeal had *not* been perfected, as Petitioner claimed. Respondent brought this to the attention of the Appellate Division, which then recalled and vacated its November 13, 2014 order and *sua sponte* assigned Petitioner new appellate counsel for the purposes of prosecuting his *coram nobis* motion. The state *coram nobis* proceeding was thus reopened, and it is this Court's understanding that it is still pending.

Not only does this development affect the question of whether Petitioner's claim for ineffective assistance of appellate counsel should still be considered exhausted for purposes of federal habeas review, but it also affects this Court's statute-of-limitations analysis. Indeed, Respondent, who originally considered moving to dismiss the petition as time-barred, has now taken the position that the applicable statute of limitations for this habeas petition has not yet begin to run, as Petitioner's judgment of conviction never actually became "final." After considering each of the procedural issues that the petition now raises, this Court recommends that it be dismissed without prejudice, so that Petitioner's ineffective-assistance-of-appellate counsel claim, as well as his other two claims (which are both unexhausted), may first be considered fully by the state courts.

### BACKGROUND

#### A. Factual Background

Although Respondent represents that, "because there was no appeal, the trial was never transcribed" (Declaration of Lisa E. Fleischmann, Esq., in Opposition to Petition, dated Mar. 3, 2017 ("Fleischmann Decl.") (Dkt. 27) ¶ 24), the Record contains representations by the District Attorney as to the underlying facts of Petitioner's case (*see* SR-098-99).[1] According to those representations, on April 21, 1981, at about 2:40 a.m., Petitioner fired a shot at taxi driver, and then drove off in his own car. (*See* SR-098.) The taxi driver reported the shooting to two uniformed police officers on patrol, and, as the officers then pursued Petitioner's car, Petitioner proceeded to fire three more shots into the officers' marked police car. (SR-098-99.) After Petitioner's car struck a parked car, he attempted to flee on foot, and, when one of the officers exited the police car to follow him, Petitioner turned and fired another shot at the officers. (SR-099.) Eventually,

Case 7:23-cv-05428-CS   Document 8   Filed 11/06/23   Page 4 of 12

Rodriguez v. Uhler, Not Reported in Fed. Supp. (2017)
2017 WL 9807068

Petitioner was apprehended with a five-shot revolver that had five spent rounds. (*Id.*)

### B. Procedural History

#### 1. Petitioner's Conviction and Sentence

**\*2** Following a trial by jury in the Supreme Court of the State of New York, New York County, at which the Honorable Frederic S. Berman, J.S.C., presided, Petitioner was convicted on April 2, 1982, of two counts of attempted first-degree murder, in violation of New York Penal Law §§ 110.00 and 125.27 (attempted murder of a police or corrections officer), and one count of second-degree weapons possession, in violation of New York Penal Law § 265.03. (*See* Petition Under 28 U.S.C. for Writ of Habeas Corpus by a Person in State Custody, dated Nov. 9, 2015 ("Petition" or "Pet.") (Dkt. 1) ¶¶ 1, 4, 6; *see also* SR-019; Fleischmann Decl. ¶ 2.) He is currently serving two prison terms of 20 years to life for the attempted murders and a 15-year term for the weapon offense, all running concurrently. (Fleischmann Decl. ¶ 2; *see also* SR-019; Pet. ¶ 3 (stating total sentence as 20 years to life).) [2]

#### 2. Assignment of Appellate Counsel, and Counsel's Apparent Failure To Perfect the Appeal

Court records show that Petitioner was sentenced on April 21, 1982 by Justice Berman, and that he was given written notice of his right to appeal. (*See* SR-019.) It would seem that Petitioner proceeded to file a notice of appeal, as court records show that, on June 15, 1982, the Appellate Division, First Department, issued an order assigning William E. Hellerstein, Esq. ("Hellerstein"), to represent Petitioner on appeal. (SR-017.) Court records also show that, on February 24, 1983, the Appellate Division granted a request by Hellerstein to be relieved of that assignment and substituted Thomas P. Burke, Esq. ("Burke") as Petitioner's new appellate counsel, simultaneously extending Petitioner's time to perfect the appeal to 120 days from the date of its order, or, if the record had not yet been filed, then to 120 days from the date of the filing of the record. (SR-018.)

A file card, which Respondent explains was "maintained by the New York County District Attorney's Appeals Bureau" (Fleischmann Decl. ¶ 6) accurately reflects Burke's appointment on February 24, 1983 (SR-023), but then inaccurately reflects that Petitioner's appeal was affirmed, under appeal number 16790, on May 17, 1983 (*id.*). As acknowledged by Respondent (*see* Fleischmann Decl. ¶ 6), the affirmance issued by the Appellate Division, First Department, on May 17, 1983, under appeal number 16790, was an affirmance of the conviction of a different "Jose Rodriquez," who had been convicted of a different charge, at a trial over which a different judge had presided, and who had been assigned different appellate counsel (*see* SR-025 (Order of Affirmance on Appeal from Judgment 16790) ). Accordingly, the file card and the affirmance referenced on it cannot be used to support the conclusion that Petitioner's appeal was actually perfected and his conviction affirmed (*see* Fleischmann Decl. ¶ 6 (acknowledging that the cited order "referenced a different appeal") ), and Respondent has come forward with no other court records to demonstrate that Burke ever took steps to proceed with the appeal.

As discussed further below (*see* Discussion, *infra*, at Section II(B) ), Respondent has also provided no records to suggest that Petitioner ever filed any collateral motion in the trial court to vacate his conviction under Section 440 of the New York Criminal Procedure Law.

#### 3. Petitioner's *Coram Nobis* Motion

On April 16, 2014, approximately 31 years after Burke's appointment, Petitioner filed a *coram nobis* motion in the Appellate Division, First Department, claiming that he "did not receive 'Meaningful Representation' on direct appeal insofar as [his] counsel failed to submit an appeal on [his] behalf." (SR-002-03 (Notice of Motion); *see also* SR-004-08 (Supporting Affidavit); SR-011-16 (Memorandum of Law).) Petitioner contended that he was "[un]aware of the Court assigning any counsel who either filed a notice of appeal, direct appeal or Anders brief, on [his] behalf." (SR-005.) [3] He further contended that he "[did not] advise his assigned counsel that he wished to waive his right to file an appeal challenging his criminal convictions" and that "he did not knowingly and intelligently waive" that right. (SR-005-06.)

**\*3** The State opposed Petitioner's motion on or about August 14, 2014, by filing an affirmation of an Assistant District Attorney, setting out the procedural history of the matter, as well as legal argument. (SR-026-31.) By way of that affirmation, the State pointed out the discrepancy between the records of the Appellate Division and those maintained by the District Attorney's Office. (*See* SR-027-28.) The State argued

Case 7:23-cv-05428-CS   Document 8   Filed 11/06/23   Page 5 of 12

Rodriguez v. Uhler, Not Reported in Fed. Supp. (2017)
2017 WL 9807068

that, "if the Court's records are correct, [then] appeal was perfected and [Petitioner's] [*coram nobis*] petition is entirely baseless." (SR-028 ¶ 4.) The State went on to argue, though, that even if Petitioner's appeal had not been perfected, his *coram nobis* motion should nonetheless be rejected because, as a result of Petitioner's delay in seeking relief, his appeal should be deemed to have been abandoned (SR-028-0 29 ¶ 5), or his motion should be rejected under the doctrine of laches (SR029-30 ¶ 6), or he should be found to have contributed to his counsel's failure to perfect the appeal, and thus to be unable to meet the standards necessary to demonstrate ineffective assistance of counsel (SR-030-31 ¶¶ 7-8).

Petitioner filed a reply on or about August 25, 2014 (SR-033-44), explaining his delay in seeking *coram nobis* relief by stating that "his conversation with a fellow prisoner about unrelated legal subjects [had] led to the revelation that [Petitioner's] court[-]appointed attorney was constitutionally charged with advising him of his appeal rights, and ... with perfecting an appeal on his behalf." (SR-042 ¶ 49.) Petitioner also stated in his reply that the "deficiency" of his appellate counsel caused him prejudice by "strip[ing] him of [not only] his right to seek State review of his criminal conviction[,] but also any potential federal review as a consequence of not raising and exhausting any appellate issues in State court." (SR-042-43 ¶ 51.)

By Order dated November 13, 2014, the Appellate Division denied Petitioner's *coram nobis* motion without opinion. (*See* SR-045.) In its Order, however, the court did recite (apparently incorrectly) the procedural history of Petitioner's direct appeal, by stating:

> A decision and order of this Court having been entered on May 17, 1983 (Appeal No. 16790), unanimously affirming a judgment of the Supreme Court, New York County (Walsh, J.), rendered on April 21, 1982 ...

(*Id.*) Thus, despite the State having pointed out the issue, it appears that the Appellate Division denied the motion on the basis of an erroneous understanding of the appellate history of Petitioner's case.

On or about November 26, 2014, Petitioner sought leave to appeal the denial of his *coram nobis* motion to the New York Court of Appeals. (*See* SR-47-91.) The State opposed that application by letters dated January 6, 2015 (SR-092-95) and January 15, 2015 (SR-096-100), and Petitioner submitted a reply letter dated January 26, 2015 (SR-101-04). On June 29, 2015, the Court of Appeals denied leave to appeal, without opinion. (SR-105.)

### 4. Petitioner's Habeas Petition and the Subsequent Reopening of His State *Coram Nobis* Proceeding

On November 9, 2015, Petitioner filed his habeas Petition in United States District Court for the Northern District of New York, the district in which he was incarcerated. (*See* Pet.; *see also* Dkt. 3.) [4] On November 23, 2015, the matter was transferred to this Court. (*See* Dkt. 3.)

In his Petition, Petitioner asserts three claims for habeas relief: (1) that he was denied the effective assistance of appellate counsel because his appeal had never been perfected (Pet. ¶ 12(A) ); (2) that he was denied the effective assistance of trial counsel because his trial counsel "never advised [him] of his right to testify at his criminal trial" (*id.* ¶ 12(B) ); and (3) that he was denied the effective assistance of trial counsel because his trial counsel "never communicated or attempted to negotiate a favorable plea deal on Petitioner's behalf" (*id.* ¶ 12(C) ). Petitioner's second claim is based more specifically on an allegation that, at the time of his trial, Petitioner was a recent Cuban immigrant who did not speak English, but his trial counsel never communicated to him through a Spanish interpreter that he had the right to testify at trial. (*Id.* ¶ 12(B).) His third claim is based on an allegation that, in meeting with Petitioner in the courthouse "prisoner bull pen" before an interpreter had yet been assigned to assist with the case, Petitioner's counsel was able to ask Petitioner, with the assistance of other detainees, if Petitioner "would be willing to take a plea," but, after Petitioner "stated that he was interested," his counsel "never mentioned to Petitioner what the plea offer was." (*Id.* ¶ 12(C).)

**\*4** By Order dated March 31, 2016, the Honorable Loretta A. Preska, Chief United States District Judge, directed Petitioner to show cause why the Petition should not be dismissed as time-barred. (Dkt. 6.) Petitioner filed an Affirmation in response, in which he appeared to suggest that his Petition was timely because his direct appeal had never been perfected, and thus his conviction had never been rendered final. (*See* Dkt. 8.) After the Court received this Affirmation, the case was reassigned to the Honorable George

Case 7:23-cv-05428-CS   Document 8   Filed 11/06/23   Page 6 of 12

Rodriguez v. Uhler, Not Reported in Fed. Supp. (2017)
2017 WL 9807068

B. Daniels, U.S.D.J., who set a schedule for Respondent to answer and oppose the Petition and for Petitioner to reply (Dkt. 10), and who referred the matter to this Court for a report and recommendation (Dkt. 11).

In the course of investigating Petitioner's habeas claims, Respondent discovered that the Appellate Division had, in fact, been mistaken when it stated that Petitioner's direct appeal was perfected and had been decided on May 17, 1983. (*See* Letter to the Court from Lisa Ellen Fleischmann, Esq., dated Nov. 23, 2016 (Dkt. 20), at 1 ("Some circumstances, some of which I learned only this week, suggest that the appeal may not have been perfected."); Letter to the Court from Lisa E. Fleischmann, Esq., dated Feb. 17, 2017 ("2/17/17 Fleischmann Ltr.") (Dkt. 24), at 1 ("The Appellate Division has since confirmed that no appeal was litigated in [P]etitioner's case.").) Apparently, Respondent communicated with the Appellate Division about this (*see* 2/17/17 Fleischmann Ltr., at 1), and, on February 16, 2017, the Appellate Division entered an order *sua sponte* assigning new appellate counsel for Petitioner "for the purposes of evaluating and prosecuting the ... motion for a writ of error coram nobis," and recalling and vacating its order of November 13, 2014, by which it had originally denied that motion. (SR-106-07; *see also* 2/17/17 Fleischmann Ltr., at 2.) [5]

Respondent filed an opposition to Petitioner's habeas Petition on March 3, 2017. (*See* Answer, dated Mar. 3, 2017 (Dkt. 26); Fleischmann Decl. and Appendix thereto; Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, dated Mar. 3, 2017 ("Resp. Mem.") (Dkt. 28.) ). Petitioner did not file a reply. (*See* Dkt.)

Subsequent to the receipt of Respondent's opposition papers, this Court's Chambers requested that Respondent provide an update regarding the status of Petitioner's reopened state *coram nobis* motion. Respondent informed the Court, on August 1, 2017, that Petitioner's state-court proceedings were still pending. (*See* Letter to the Court from Lisa E. Fleischmann, Esq., dated Aug. 1, 2017 (Dkt. 30).) [6]

### DISCUSSION

### I. APPLICABLE LEGAL STANDARDS

#### A. Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner seeking habeas relief in federal court must file a petition within one year of the latest of four dates:

> *5 (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Where a prisoner's conviction became final prior to AEDPA's effective date of April 24, 1996, the prisoner would have had one year from that date, *i.e.*, until April 24, 1997, to file a federal habeas petition, absent a basis to toll the statute of limitations. *See Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998).

The statute of limitations is an affirmative defense that "is waived if not raised in the answer to the complaint." *S.E.C. v. Amerindo Inv. Advisors*, 639 F. App'x 752, 754 (2d Cir.), cert. denied, 136 S. Ct. 2429 (2016) (quoting *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 752 (2d Cir. 1992), as amended (Sept. 23, 1992) ). Where the defense is not deliberately and intelligently waived by the respondent, the court has discretion to dismiss the petition *sua sponte* as time-barred. *Day v. McDonough*, 547 U.S. 198, 208-09 (2006). In particular, where the government "does not strategically withhold the limitations defense or choose to relinquish it and where the Petitioner is accorded a fair opportunity to present his position," a district court may "consider the defense on its own initiative and determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time-

barred." *Wood v. Milyard*, 132 S. Ct. 1826, 1833-34 (2012) (quoting *Day*, 547 U.S. at 210-11) (internal quotation marks omitted). If it appears, for example, that a respondent's failure to raise the statute of limitations defense was due to an "inadvertent error," such as a mathematical error made when calculating the limitations period, it may be appropriate for a federal court to evaluate the time-bar issue *sua sponte*. See *Day*, 547 U.S. at 211. A district court abuses its discretion, however, where it "override[s] a State's deliberate waiver of the limitations defense." *Id.* at 202.

### B. Exhaustion

"State courts, like federal courts, are obliged to enforce federal law," *O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999), and, as a general matter, a federal court may not grant a petition for a writ of habeas corpus unless the petitioner has exhausted the remedies available in the state courts, *id.* ("[W]hen a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "This rule of comity reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan*, 526 U.S. at 844 (quotation marks, internal alteration, and citations omitted); *see also Rhines v. Weber*, 544 U.S. 269, 273-74 (2005) ("the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims" (citation omitted) ). Under AEDPA, the only times when a federal court may grant habeas relief absent full exhaustion are where it appears that there is either "an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the [petitioner]." 28 U.S.C. § 2254(b)(1).

*6 To satisfy AEDPA's exhaustion requirement, a habeas petitioner must first "fairly present" his federal claims to the state courts, in federal terms, thereby affording those courts the " 'opportunity to pass upon and correct' alleged violations of ... prisoners' federal rights." *Baldwin*, 541 U.S. at 29 (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ).

A petitioner may accomplish this in several ways, including by citing relevant provisions of the federal Constitution in his appellate brief, *see Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001), or by relying on "pertinent federal cases employing constitutional analysis," *Rustici v. Phillips*, 308 F. App'x 467, 469 (2d Cir. 2009) (internal quotation marks and citation omitted).

In addition, to satisfy the exhaustion requirement, a habeas petitioner must present his federal claims to "the highest court of the pertinent state." *Chebere v. Phillips*, No. 04cv296 (LAP), 2013 WL 5273796, at *19 (S.D.N.Y. Sept. 18, 2013) (quoting *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) ). Where a petitioner has been convicted in a New York state court, he may exhaust a federal claim challenging his conviction by presenting the claim on direct appeal to the Appellate Division, and then by seeking leave to appeal to the New York Court of Appeals. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Where a claim is not appropriate for direct appeal because it cannot be demonstrated on the basis of the pretrial or trial record, a petitioner may exhaust the claim by raising it to the state trial court in a collateral post-conviction motion, typically in a motion made pursuant to Section 440 of the New York Criminal Procedure Law. *See e.g., Reyes v. Phillips*, No. 02cv7319 (LBS), 2005 WL 475544, at *4 (S.D.N.Y. Mar. 1, 2005) ("[A] motion under N.Y. Crim. Proc. Law § 440.10 was the appropriate vehicle with which to exhaust [petitioner's] ineffective-assistance-of-counsel claim insofar as it relied upon evidence outside the record."). To exhaust the claim fully, the petitioner must then seek leave to appeal the denial of the Section 440 motion to the Appellate Division, *see Ture v. Racette*, No. 9:12cv01864 (JKS), 2014 WL 2895439, at *4 (N.D.N.Y. June 26, 2014), although New York law then provides for no further discretionary appeal to the Court of Appeals, *see Ramos v. Walker*, 88 F. Supp. 2d 233, 234 n.3 (S.D.N.Y. 2000). Finally, a petitioner may exhaust a claim of ineffective assistance of appellate counsel by raising that claim to the Appellate Division on a motion for a writ of error *coram nobis*, and by then seeking leave to appeal the denial of that motion to the Court of Appeals. *See Shomo v. Maher*, No. 04cv4149 (KMK), 2005 WL 743156, at *3 (S.D.N.Y. Mar. 31, 2005) (citing N.Y.C.P.L. §§ 450.90(1), 460.10(5)(a) ).

Where a petitioner presents one or more unexhausted claims in a habeas petition, the district court may dismiss the petition without prejudice, or it may stay the petition and hold it in abeyance, so as to allow the petitioner to exhaust the claim(s)

Case 7:23-cv-05428-CS   Document 8   Filed 11/06/23   Page 8 of 12

Rodriguez v. Uhler, Not Reported in Fed. Supp. (2017)
2017 WL 9807068

without risk that the one-year limitations period will expire prior to the time when the petitioner would realistically be able to return to the federal court, should his claims be rejected by the state courts. *See generally Rhines*. For example, where a petitioner has "reasonable confusion" as to whether a state filing would be "properly filed" (such that it would toll the statute of limitations under 28 U.S.C. § 2244(d)(2) ), the Supreme Court has suggested that the petitioner may "fil[e] a 'protective' petition in federal court[,] ... asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). Under *Rhines*, though, a district court should stay a habeas petition only "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278. "[I]t is the petitioner who has the burden of demonstrating 'good cause' for his failure to exhaust previously any unexhausted claims." *Perkins v. LaValley*, No. 11cv3855 (JGK), 2012 WL 1948773, at *1 (S.D.N.Y. May 30, 2012).

*7 Where a habeas claim has not been fully exhausted in the state courts, the federal court may nonetheless deny the claim on the merits, under 28 U.S.C. § 2254(b)(2). The court should only deny an unexhausted claim, however, where it is plainly without merit. *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 381 (E.D.N.Y. 2013).

## II. THE PETITION SHOULD BE DISMISSED WITHOUT PREJUDICE.

### A. Petitioner's Claims, While Old, Do Not Appear To Be Time-Barred.

As a threshold matter, and due to the significant age of Petitioner's claims, it is appropriate for the Court to consider the potential application of the one-year AEDPA statute of limitations to those claims.

At the time the Petition was filed in federal court, it appeared that the statute of limitations had run. Based on the information recited in the November 13, 2014 decision of the Appellate Division, it seemed that Petitioner's conviction had been affirmed in 1983 (SR-045), and thus had been rendered final well prior to AEDPA's effective date of April 4, 1996, such that any habeas petition filed later than April 4, 1997 would have been untimely, *see Ross*, 150 F.3d at 103. The Appellate Division's later recall and vacatur of its November 2014 decision (SR-106-07), however, changed this analysis. From the information that has now been provided by Respondent, this Court understands that, as Petitioner contends, his appeal was never perfected. (*See* 2/17/17 Fleischmann Ltr.) Further, this Court has been presented with no documentary evidence that the Appellate Division ever formally deemed Petitioner's appeal to be abandoned and dismissed it on that basis. *Cf. Rodney v. Breslin*, No. 07cv4519 (SLT), 2007 WL 3353675, at *3 (E.D.N.Y. Nov. 9, 2007) (rejecting petitioner's argument that his conviction had never become final because, despite counsel's failure to perfect the appeal, "the Appellate Division nonetheless dismissed the appeal as abandoned ..., thereby concluding direct review and rendering the conviction final for purposes of 28 U.S.C. § 2244(d)(1)(A)").

Given the language of 28 U.S.C. § 2244(d)(1), which provides that the AEDPA statute of limitations runs from the *latest* of the specified trigger dates—one of which is "the date on which the judgment became final by the conclusion of direct review," 28 U.S.C. § 2244(d)(1)(A); *see also* Discussion, *supra*, at Section I(A)—this Court concludes that Respondent is correct when he now takes the position that, in this case, "the limitations period has not begun to run." (Resp. Mem., at 9.) Moreover, by taking this position, Respondent has not merely ignored, or failed to raise, a potential statute-of-limitations defense. In early correspondence, before learning that Petitioner's appeal had not been perfected, Respondent informed the Court that she would likely challenge the Petition as time-barred. (*See* Letter to the Court from Lisa Ellen Fleischmann, Esq., dated Nov. 9, 2016 ("11/9/16 Fleischmann Ltr.") (Dkt. 16) ("... I will probably move to dismiss this petition on the ground that it is untimely").) Evidently, Respondent reevaluated that position after determining that Petitioner's conviction was never affirmed or his appeal dismissed, and decided that a statute-of-limitations defense would not be viable. Respondent's decision not to raise such a defense —and, indeed, Respondent's affirmative statement that the Petition is *not* time-barred—must therefore be seen as a deliberate, considered choice, not one based on oversight or computational error. In these circumstances, even if the Court were to disagree with Respondent's analysis, it should not override Respondent's waiver of any statute-of-limitations defense. *See Wood*, 132 S. Ct. at 1833-34.

Case 7:23-cv-05428-CS   Document 8   Filed 11/06/23   Page 9 of 12

Rodriguez v. Uhler, Not Reported in Fed. Supp. (2017)
2017 WL 9807068

**\*8** For these reasons, despite the age of Petitioner's claims, I do not recommend that the Petition be dismissed on statute-of-limitations grounds.

### B. All of Petitioner's Claims Are Unexhausted.

As described above, Petitioner raised his first habeas claim —that he was denied the effective assistance of appellate counsel by his counsel's failure to perfect Petitioner's appeal —in the Appellate Division, by way of a motion for a writ of error *coram nobis*, and, when that motion was initially denied, he sought to raise the claim in the Court of Appeals, which denied leave to appeal. Further, at both state levels, Petitioner raised this claim in federal terms. (*See* SR-006 (citing the Sixth Amendment in *coram nobis* motion); SR-013-14 (relying on *Strickland v. Washington*, 466 U.S. 668 (1984), in support of motion); *see also* SR-057 (arguing to the Court of Appeals that it should review the question of "[w]hether a criminal conviction is constitutionally valid when there is no evidence that the indigent defendant was represented on direct appeal ...").) As all that is generally required for exhaustion of a habeas claim is that the petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan*, 526 U.S. at 845; *Woodford v. Ngo*, 548 U.S. 81, 92 (2006), it appeared, at the time he filed his Petition, that the efforts that had been made by Petitioner to exhaust this claim were sufficient. When, however, the Appellate Division then recalled and vacated its *coram nobis* decision, effectively restoring Petitioner's *coram nobis* motion to its docket and providing him with an opportunity to advance his ineffective-assistance-of-appellate-counsel claim *ab initio*, the exhaustion analysis for this claim became more complex.

This Court has not located any case law from this Circuit on the question of how a state court's recall and vacatur of a prior order should impact exhaustion for purposes of habeas review. A somewhat analogous situation arose in *Page v. Greene*, No. 05cv3985 (KMK) (LMS), 2010 WL 8971503, at \*8-9 (S.D.N.Y. Jan. 6, 2010) (report and recommendation), *adopted by* 2012 WL 4477548 (S.D.N.Y. Sept. 28, 2012), in which, as here, the Appellate Division had recalled and vacated its original decision and substituted an order allowing petitioner to reargue his appeal. *Id.* at \*8. The petitioner, however, did not notify the Court of Appeals of the Appellate Division's action, and the Court of Appeals subsequently "denied [the] [p]etitioner's leave to appeal the *original decision*." *Id.* (emphasis in original). The court considered whether, in light of this "strange turn of events," the petitioner's habeas claim should be considered exhausted, *id.*, and, after an "exhaustive search" for factually similar cases, found "no case law ... that clearly held that such a circuitous appellate process indicate[d] a failure to exhaust remedies by the [p]etitioner," *id.* at \*9. Nonetheless, the court ultimately declined to decide the issue and disposed of the claim on alternate grounds. *Id.*

In this case, this Court finds that the interests of comity counsel in favor of finding that Petitioner's claim is unexhausted. As previously noted, federal courts may only grant habeas relief absent full exhaustion in limited cases where there is "an absence of available State corrective process," or such process is "ineffective" and cannot protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). This case would not qualify under either exception. Indeed, to this Court's understanding, Petitioner, through newly assigned counsel, is currently in the process of briefing his ineffective-assistance-of-appellate-counsel claim to the Appellate Division. Under the particular circumstances present here, Petitioner's first claim should no longer be considered exhausted for purposes of habeas review.

**\*9** Further, it is clear that neither of Petitioner's other two habeas claims are exhausted. Both his second and third claims —that his trial counsel was ineffective for failing (a) to advise him of his right to testify at trial, and (b) to communicate or negotiate a plea deal (*see* Pet. ¶ 12(B), (C) )—are off-the-record claims that could have been raised in a collateral motion to vacate his conviction under Section 440 of the New York Criminal Procedure Law. In his Petition, however, Petitioner makes no mention of ever filing a Section 440 motion. (*See* Pet. ¶¶ 10, 11 (referring solely to *coram nobis* motion, in response to the question, "Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?").) Nor does the presented state-court record contain a copy of any such motion. As Respondent points out, there is no time-bar to Petitioner's bringing a Section 440 motion (*see* Resp. Mem., at 7) (citing *Mercedes v. Superintendent*, No. 12cv0687 (DNH), 2014 WL 2711803, at \*6 (N.D.N.Y. June 16, 2014) ), and thus Petitioner still has an avenue available to him to present these ineffective-assistance-of-trial-counsel claims in state court.

Case 7:23-cv-05428-CS   Document 8   Filed 11/06/23   Page 10 of 12

Rodriguez v. Uhler, Not Reported in Fed. Supp. (2017)
2017 WL 9807068

For these reasons, this Court finds that, while seemingly timely, none of Petitioner's habeas claims have yet been exhausted.

**C. In the Unusual Circumstances Presented, Dismissal Without Prejudice Is the Appropriate Result.**

As all of Petitioner's habeas claims should be considered unexhausted, and as Petitioner has not demonstrated that State corrective procedures are either currently unavailable to him or have been rendered ineffective, habeas relief cannot be granted by the Court. 28 U.S.C. § 2254(b)(1)(B).

Further, although a district court is permitted, under AEDPA, to dismiss unexhausted claims where they have no merit, *see* 28 U.S.C. § 2254(b)(2), this Court cannot conclude, at this juncture, that Petitioner's claims are meritless. As to his first claim, while an appellate attorney's failure to pursue an appeal will not necessarily constitute constitutional ineffective assistance of counsel, *see generally Roe v. Flores-Ortega*, 120 S. Ct. 1029 (2000), it is possible that Petitioner could demonstrate ineffective assistance in this case, *see id.* Absent development of the record, which should occur, in the first instance, in a state forum, this Court should not attempt to make the merits determination. *See id.* at 484-85 (holding that, under *Strickland*, the question of whether appellate counsel's failure to pursue an appeal constituted ineffective assistance is a fact-specific inquiry). Similarly, development of the record would be needed to assess the merits of Petitioner's second and third claims. As Respondent notes (*see* Resp. Mem., at 7-8), those claims turn on questions as to what transpired between Petitioner and his trial counsel off the record, questions that could be explored in the context of a Section 440 motion that Petitioner could still make to the trial court.[7] Without an underlying record, this Court is not in a position to determine whether Petitioner's trial counsel actually failed to inform Petitioner of his right to testify at trial, or failed to communicate a plea offer, thereby depriving him of his Sixth Amendment right to the effective assistance of trial counsel. Dismissal under 28 U.S.C. § 2254(b)(2) would thus be improper.

This Court has also considered whether it would be appropriate here for the Court to stay the petition and hold these proceedings in abeyance, while Petitioner exhausts his claims. Respondent argues that, as the Petition in this case is not a "mixed petition," *i.e.*, one containing a mix of exhausted and unexhausted claims, a stay would be simply impermissible here. (*See* Resp. Mem., at 9 (citing, *inter alia, Pantoja v. New York State Div. & Bd. of Parole*, No. 11cv9709 (CS) (PED), 2013 WL 866869, at *6 (S.D.N.Y. Jan. 10, 2013) (report and recommendation), adopted by 2013 WL 865905 (S.D.N.Y. Mar. 8, 2013) ).) This Court does not agree, as *Pace*, cited above (*see* Discussion, *supra*, at Section I(B) ), supports the proposition that a "protectively filed" petition may be stayed, even if all of the claims presented therein are unexhausted, *see id.* Nonetheless, for Petitioner to obtain a stay of his entire Petition under *Pace*, he would at least have to show good cause for his failure to exhaust his claims, *see id.*; *see also Rhines*, 544 U.S. at 277.[8] While Petitioner can show that he tried to raise his ineffective-assistance-of-appellate-counsel claim at all available state levels prior to filing his habeas Petition, he has not made, and seemingly cannot make, a showing of good cause for his evident failure to exhaust his ineffective-assistance-of-trial counsel claims.

**\*10** Moreover, even if a stay were permissible in this case, Respondent argues that the usual rationale for staying a habeas petition—that, for statute-of-limitations reasons, to do otherwise would effectively deprive the petitioner of any opportunity to place his claims before the Court for habeas review, *see Rhines*, 544 U.S. at 274-76—is not present here. As discussed above, Respondent now asserts that the statute of limitations has not even begun to run in this case. (*See* Discussion, *supra*, at Section II(A).) On that basis, Respondent contends that "the rationale for the stay and abeyance procedure is inapplicable here." (Resp. Mem., at 9 (quoting *Owens v. New York State Parole Bd.*, 13cv8057 (PAE) (HBP), 2014 WL 5089364, at *6 (S.D.N.Y. Sept. 25, 2014) ).) In other words, Respondent takes the position that, as there is no meaningful risk that the statute of limitations period will run while Petitioner pursues his state-court remedies, the dismissal of his current petition without prejudice would not have the effect of causing him to forfeit later federal review of a potentially meritorious ineffective-assistance-of-appellate-counsel claim. Thus, Respondent suggests that there would be no sound policy reason to keep this matter open while Petitioner prosecutes his claims in the state courts.

This argument as to why a stay is not needed in this case to protect Petitioner's federal rights is persuasive, and I recommend that the Court accept the argument and dismiss the Petition without prejudice on the ground that a stay is not necessary to prevent the forfeiture of Petitioner's claims. The Court's acceptance of, and reliance on, Respondent's

Case 7:23-cv-05428-CS   Document 8   Filed 11/06/23   Page 11 of 12

Rodriguez v. Uhler, Not Reported in Fed. Supp. (2017)
2017 WL 9807068

argument would afford Petitioner still further protection, as Respondent would then be hard-pressed—and likely judicially estopped—from asserting a contrary position on the statute of limitations in a subsequent proceeding, should Petitioner's *coram nobis* motion be denied anew by the state courts, and should he then seek to file a new habeas petition. *See generally* New Hampshire v. Maine, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position...." (internal quotation marks and citation omitted) ).

In sum, this Court finds that all of Petitioner's habeas claims are currently unexhausted; that, despite the age of Petitioner's claims, the AEDPA statute of limitations has not yet begun to run; that, for this reason, Petitioner would not effectively forfeit any potential meritorious federal claims by a decision by this Court to dismiss the Petition without prejudice, rather than to stay the Petition and hold these proceedings in abeyance; and that the Petition should therefore be dismissed without prejudice to refile.

### CONCLUSION

For all of the foregoing reasons, I respectfully recommend that the Petition for a writ of habeas corpus be dismissed in its entirety, without prejudice. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A) because, if the Petition is dismissed without prejudice to refile, Petitioner cannot yet have "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, New York, New York 10007, Room 1310, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBEJCTIONS AND WILL PRECULDE APPELLATE REVIEW. *See* Thomas v. Arn, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

**\*11** If Petitioner does not have access to cases cited herein that are reported only on Westlaw, he may request copies from Respondent's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of [cases and other authorities that are unpublished or reported exclusively on computerized databases that are] cited in a decision of the Court and were not previously cited by any party").

**All Citations**

Not Reported in Fed. Supp., 2017 WL 9807068

### Footnotes

1    The State Court Record (appended to the Fleischmann Decl. (*see* Dkts. 27-1 & 27-2) ) is cited herein by reference to its page numbers, which have been stamped in the form "SR-___."

2    It not only appears that Petitioner was not released on parole, but also that, for a separate crime committed while he was incarcerated (first-degree manslaughter, in violation of New York Penal Law § 125.20(1) ), he was sentenced to an additional term of imprisonment of 15 years. (*See* Fleischmann Decl. ¶ 2.)

Case 7:23-cv-05428-CS   Document 8   Filed 11/06/23   Page 12 of 12

Rodriguez v. Uhler, Not Reported in Fed. Supp. (2017)
2017 WL 9807068

| | |
|---|---|
| 3 | An "*Anders* brief" is an appellate brief filed by court-appointed counsel who seeks to withdraw from representing the appellant on the ground that there is no non-frivolous basis for the appeal. The brief must identify all possible grounds for appeal found in the record, so as to enable the court to determine whether an appeal would be frivolous and the attorney should be permitted to withdraw. See *Anders v. California*, 386 U.S. 738 (1967). |
| 4 | Under the so-called "prison mailbox rule," *see Houston v. Lack,* 487 U.S. 266, 270, (1988), a *pro se* prisoner's habeas petition is deemed filed on the date he gives it to prison officials for delivery to the Court, *see Noble v. Kelly,* 246 F.3d 93, 97 (2d Cir. 2001), *cert. denied*, 534 U.S. 886. Therefore, although the Petition was stamped "FILED" in the Northern District of New York on November 20, 2015, this Court will consider it to have been filed as of November 9, 2015, the date it was signed by Petitioner. *See, e.g., Young v. Great Meadow Corr. Facility Superintendent*, No. 16cv1420 (PAE) (BCM), 2017 WL 480608, at *2 (S.D.N.Y. Jan. 10, 2017) (citing *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) ). |
| 5 | According to Respondent, "[m]embers of the Appellate Division's clerk's office were unable to determine why the appeal was never perfected, because the assigned counsel, Thomas P. Burke, Esq., was disbarred a number of years ago, and is now deceased." (2/17/17 Fleischmann Ltr., at 1.) |
| 6 | Although Respondent's August 1, 2017 letter stated that Petitioner was being represented "on his appeal" by an attorney with the Center for Appellate Litigation, and that this attorney has "not yet perfected [Petitioner's] appeal" (*id.*), it is this Court understanding from the Appellate Division's February 16, 2017 Order that Petitioner had been assigned counsel for the purpose of prosecuting Petitioner's reinstated *coram nobis* motion, not an appeal (*see* SR-106-07 (Appellate Division's Order, quoted above); *see also* Fleischmann Decl. ¶ 22 (stating that counsel "has been assigned to represent [P]etitioner on the coram nobis motion") ). |
| 7 | As Respondent notes, "Petitioner's trial counsel, Christopher South, is still practicing in New York ... [and] may well be able to speak to these claims." (Resp. Mem., at 8; *see also* Fleischmann Decl. ¶ 23.) |
| 8 | In light of *Pace*, four federal appeals courts to consider the matter have concluded that a district court has discretion to stay wholly unexhausted petitions, provided the petitioner can show, consistent with *Rhines*, good cause for failure to exhaust, potential merit, and a lack of intentionally dilatory tactics. See *Mena v. Long*, 813 F.3d 907, 910-11 (9th Cir. 2016); *Doe v. Jones*, 762 F.3d 1174, 1181 (10th Cir. 2014); *Heleva v. Brooks*, 581 F.3d 187, 192 (3rd Cir. 2009); *Dolis v. Chambers*, 454 F.3d 721, 725 (7th Cir. 2006). |

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.